RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0364p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
———————————

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee*,

                                                    Nos. 11-2438/2439
          *v.*

JAMES TAYLOR (11-2438) and DERRICK
GRAVES (11-2439),
                    *Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:11-CR-160—Robert Holmes Bell, District Judge.

Decided and Filed:  October 22, 2012

Before:  SUTTON, GRIFFIN, and WHITE, Circuit Judges.

———————————

## COUNSEL

———————————

**ON BRIEF:** Richard D. Stroba, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan for Appellant in 11-2438. Michael R. Bartish, SPRINGSTEAD & BARTISH LAW, PLLC, Grand Rapids, Michigan, for Appellant in 11-2439. B. René Shekmer, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

———————————

## OPINION

———————————

GRIFFIN, Circuit Judge.  Defendants James Taylor and Derrick Graves pleaded guilty to charges of conspiracy to defraud the United States, food-stamp fraud, drug distribution, and unlawful possession of a firearm.  Both appeal their sentences.  We affirm.

I.

James Taylor owned and operated a small convenience store in Lansing, Michigan, where he, his wife, and several others worked.  In August 2008, the store received authorization to redeem benefits through the Supplemental Nutrition Assistance Program ("SNAP"), a federally funded, national program that uses federal funds to provide nutritional assistance to needy individuals.  From February 2010 through January 2011, the United States Department of Agriculture ("USDA") conducted an undercover operation at Taylor's store.  During that time, Taylor allowed undercover police officers and confidential informants working under the direction of USDA special agents to redeem SNAP benefits in exchange for cash that Taylor knew would be used to purchase illegal drugs.  Taylor once exchanged a firearm for SNAP benefits.

Based on this conduct, the government charged Taylor with conspiracy to defraud the United States, SNAP fraud, drug distribution, and being a felon in possession of a firearm.  He pleaded guilty to the charges.  Based on the firearm conviction and Taylor's criminal history, the probation officer recommended that Taylor was subject to an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), *see* U.S.S.G. § 4B1.4(a), resulting in a Guidelines range of 188 to 235 months' imprisonment.  Taylor objected and argued that he was not subject to an ACCA sentence.  The district court disagreed and sentenced Taylor to 188 months.

Co-defendant Derrick Graves was a friend of Taylor's and worked as an employee in his convenience store.  He assisted Taylor in redeeming SNAP benefits for cash and illegal drugs.  Specifically, he would stand outside the store and either sell drugs to people who had just redeemed benefits for cash or tell them where they could find drugs. During the course of the investigation, a confidential informant asked Graves to provide him with a firearm.  Graves eventually obtained a firearm from Taylor's wife, sold it to the informant for $1,000, and split the proceeds with Taylor's wife.  The government charged Graves with conspiracy to defraud the United States, SNAP fraud, drug distribution, and being a felon in possession of a firearm.  He pleaded guilty to all charges except for one the government later dismissed.  Based upon the firearm

conviction and his criminal history, Graves, too, was subject to an enhanced sentence under the ACCA, resulting in a Guidelines range of 188 to 235 months' imprisonment. He asked the district court to vary downward and sentence him to the statutory minimum of 180 months. The district court sentenced him to 200 months.

Taylor and Graves timely appealed.

## II.

Taylor challenges the district court's decision to sentence him as an "armed career criminal." The United States Sentencing Guidelines provide that a defendant is sentenced as an "armed career criminal" if he is subject to an enhanced sentence under the ACCA. U.S.S.G. § 4B1.4(a). Those, like Taylor, who are convicted under 18 U.S.C. § 922(g) (*e.g.*, felon possessing a firearm) and have three previous convictions for "violent felon[ies] or . . . serious drug offense[s]" are subject to an enhanced sentence under the ACCA. 18 U.S.C. § 924(e)(1). A "violent felony" is "any crime punishable by imprisonment for a term exceeding one year" that

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]

*Id.* § 924(e)(2)(B) (emphasis added). The italicized portion is known as the "residual clause." *See Sykes v. United States*, 131 S. Ct. 2267, 2273 (2011). To determine whether a given offense is a violent felony, we consider only the statutory definition of the offense and ignore the particular facts disclosed in the record of conviction. *Id.* at 2272.

Taylor concedes that two of his previous convictions—armed robbery and the delivery or manufacture of cocaine—were properly counted under the ACCA. He challenges the district court's decision to count as his third predicate offense his Michigan conviction for attempted larceny from the person. Michigan defines the offense as "stealing from the person of another[.]" Mich. Comp. Laws § 750.357.

Attempt under Michigan law requires that a defendant take "any act towards the commission of [the intended] offense," *id.* § 750.92, excluding acts of "mere preparation," *People v. Jones*, 504 N.W.2d 158, 164 (Mich. 1993). It requires "some direct movement toward commission of the crime that would lead immediately to the completion of the crime." *Id.*

In *United States v. Payne*, 163 F.3d 371 (6th Cir. 1998), we held that the *completed* offense of larceny from the person is a "crime of violence" under the Sentencing Guidelines, *id.* at 374, which also makes it a "violent felony" under the ACCA, *see United States v. Johnson*, 675 F.3d 1013, 1016 n.3 (6th Cir. 2012). Even though *Payne* did not address *attempted* larceny from the person, Taylor concedes that the decision forecloses his present challenge so long as no intervening decision from the Supreme Court "requires modification of the decision." *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985); *see* 6 Cir. R. 32.1(b). Seeking refuge in this exception to our prohibition on panel reconsideration, Taylor argues that *Begay v. United States*, 553 U.S. 137 (2008), ushered in a new residual-clause analysis under which larceny from the person (and attempted larceny) is no longer a "violent felony." While we agree that *Begay* has substantially modified residual-clause analysis, *cf. Jones v. United States*, 689 F.3d 621, 624–25 (6th Cir. 2012), we disagree that these changes help Taylor here. For the following reasons, we hold that attempted larceny from the person under Michigan law is a "violent felony" under the ACCA.

In *Begay*, the Supreme Court considered whether a state conviction for driving under the influence of alcohol, a strict-liability offense, fell within the residual clause. 553 U.S. at 142–48. Even though the offense plainly "presents a serious potential risk of physical injury to another," it did not satisfy the residual clause, the Court held, because it was too dissimilar to the enumerated offenses of burglary, arson, extortion, and those involving explosives, all of which tend to involve "purposeful, violent, and aggressive conduct." *Id.* at 144–45, 148. *Begay* thus added a second layer of inquiry: even where an offense involves conduct that presents a substantial risk of physical injury to another, courts must consider also whether the offense is "roughly similar, in kind as

well as in degree of risk posed," to the enumerated offenses. *Id.* at 142–43. Although *Begay* itself was less concerned that a candidate offense be similar to the listed offenses in terms of the "degree of risk posed" (as opposed to "the way or manner" in which it produces risk, *id.* at 144), the Supreme Court recently emphasized the importance of risk-comparison in the analysis. *See Sykes*, 131 S. Ct. at 2273, 2276, 2277; *see also United States v. Jones*, 673 F.3d 497, 506–07 (6th Cir. 2012).

*Payne* sufficiently addressed the first layer of inquiry and determined that larceny from the person involves conduct presenting a serious potential risk of physical injury to another. To reiterate: Michigan courts have interpreted the statute to require that property be taken "from the possession of the victim or be taken from within the immediate presence or area of control of the victim," which is "clearly the type of situation that could result in violence"; victims of "such an invasion of personal space would likely resist or defend in a manner that could lead to immediate violence"; the absence of a requirement that violence or harm actually result from the theft is irrelevant because the residual clause requires only "a serious *potential* risk of physical injury," and we can fathom "no situation in which larceny from the person could occur without presenting" such a risk. *Payne*, 163 F.3d at 375. We conclude, and Taylor implicitly agrees, that this analysis applies equally to the inchoate version of the offense, given that an attempt in Michigan requires the defendant to take some "direct movement" toward commission of the offense that "would lead immediately to . . . completion," *Jones*, 504 N.W.2d at 164.

Turning to *Begay*'s added layer of inquiry, we ask whether attempted larceny from the person is "roughly similar, in kind as well as in degree of risk posed," to the enumerated offenses. As for similarity in respect to the degree of risk posed, the offense compares favorably with generic burglary. The Supreme Court in *Sykes* explained that burglary is risky for the reason that it can end in confrontation leading to violence. 131 S. Ct. at 2273; *see also Taylor v. United States*, 495 U.S. 575, 588 (1990) ("The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other

person who comes to investigate."). As *Payne* makes clear, the same is true of larceny from the person: "Any person falling victim to a crime involving such an invasion of personal space would likely resist or defend in a manner that could lead to immediate violence[,]" making "the risk of ensuing struggle . . . omnipresent." *Payne*, 163 F.3d at 375 (quotations marks omitted). The offense is arguably *more* dangerous in terms of the risk of physical injury than burglary, for burglary does not require that the building or structure be occupied when burgled, *see Taylor*, 495 U.S. at 599, while larceny from the person, as its name implies, *requires* another's presence. *Cf. United States v. Rodriguez*, 659 F.3d 117, 120 (1st Cir. 2011); *United States v. Jarmon*, 596 F.3d 228, 232–33 (4th Cir. 2010). And importantly for our purposes here, attempted larceny from the person is certainly as risky as completed larceny (and therefore burglary as well), and is potentially *more* so, for it is reasonable to assume that a reason the crime may not be completed is that the victim or a concerned citizen realizes what is happening and attempts to prevent the theft, increasing the risk of violent confrontation. *Cf. James v. United States*, 550 U.S. 192, 204 (2007) (explaining that attempted burglary may be more risky than completed burglary due to a higher risk of confrontation).

Attempted larceny from the person is similar also "in kind," or in the "way or manner" it produces the risk of injury, to the enumerated offenses for the following reason: it is not a crime "akin to strict liability, negligence, and recklessness crimes." *Sykes*, 131 S. Ct. at 2276 ("*Begay* involved a crime akin to strict liability, negligence, and recklessness crimes; and the purposeful, violent, and aggressive formulation was used in that case to explain the result."); *see also Rodriguez*, 659 F.3d at 119 ("Where the prior felony has a 'stringent *mens rea* requirement,' . . . *Begay* provides no shelter." (quoting *Sykes*, 131 S. Ct. at 2275)). It requires intentional conduct. *People v. Thomas*, 197 N.W.2d 97, 99 (Mich. Ct. App. 1972). Attempted larceny from the person is a "violent felony" under the ACCA.

Our view is consistent with decisions from other circuits that have recently (since *Begay*) addressed larceny-from-the-person crimes. Every one has concluded that larceny is a "violent felony" or a "crime of violence" under a residual-clause analysis.

*See Rodriguez*, 659 F.3d at 118–20 (larceny from the person, under Massachusetts law); *United States v. Abari*, 638 F.3d 847, 849–51 (8th Cir. 2011) (theft from a person, under Minnesota law); *United States v. Alderman*, 601 F.3d 949, 952–55 (9th Cir. 2010) (first degree theft, which requires that property be taken "from the person of another," under Washington law); *United States v. Clark*, 373 F. App'x 365, 367 (4th Cir. 2010) (per curiam) (theft from a person, under New Jersey law); *Jarmon*, 596 F.3d at 233 (larceny from the person, under North Carolina law); *United States v. Patillar*, 595 F.3d 1138, 1140 (10th Cir. 2010) (larceny from the person, under Oklahoma law); *United States v. Hennecke*, 590 F.3d 619, 621–23 (8th Cir. 2010) (stealing from a person, under Missouri law); *United States v. Thrower*, 584 F.3d 70, 74–75 (2d Cir. 2009) (per curiam) (larceny from the person, under New York law).

Resisting this conclusion, Taylor argues that larceny from the person does not necessarily involve any risk of confrontation leading to violence since it does not require a use of force, violence, or intimidation—if it did, he contends, the offense would be robbery. *See People v. Lee*, 622 N.W.2d 71, 75 (Mich. Ct. App. 2000) ("Robbery is committed only when there is larceny from the person, with the additional element of violence or intimidation."). But simply because force or violence is not used to effect the theft does not mean the perpetrator's conduct precludes a potential for violent confrontation. Where property is taken from the person or from within his immediate presence or area of control, the potential for confrontation leading to violence is plain. And even if larceny from the person, "in the ordinary case," *James*, 550 U.S. at 208, involves little or no risk of confrontation (a doubtful proposition, to say the least), the same certainly cannot be said with respect to *attempted* larceny from the person, for *actual* confrontation is one reason the offense may not be completed.

Finally, Taylor asks that we declare the ACCA's residual clause void for vagueness. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983). We have rejected this challenge before, *see United States v. LaCasse*, 567 F.3d 763, 764 (6th Cir. 2009), and our court rules prevent us from reconsidering, at least sitting as a panel. *See* 6 Cir. R. 32.1(b). Another reason exists for denying Taylor's request, even were we sitting en

banc:  the Supreme Court has twice stated that the statute is sufficiently definite, *see Sykes*, 131 S. Ct. at 2277; *James*, 550 U.S. at 210 n.6, stripping us of any authority to hold otherwise.  *Cf. United States v. Jones*, 689 F.3d 696, 704–05 (7th Cir. 2012).

For these reasons, Taylor was properly sentenced as an "armed career criminal," and we affirm his sentence.

### III.

At sentencing, defendant Derrick Graves asked the district court to impose a sentence below the bottom-end of his Guidelines range, which was 188 months.  The most lenient sentence he could have lawfully received was 180 months, in light of his ACCA enhancement.  *See* 18 U.S.C. § 924(e).  The primary basis for his request was "imperfect entrapment"—the notion that undue government encouragement to commit an offense can mitigate punishment even if it cannot wholly defeat criminal liability. *See United States v. Smith*, 358 F. App'x 634, 638 (6th Cir. 2009); *see also United States v. McClelland*, 72 F.3d 717, 725 (9th Cir. 1995) (noting that those defendants who are "predisposed [to commit a crime] but who are then pressured unduly by the government to go forward with the offense" may "receive a downward departure based on imperfect entrapment").  Graves argued that he only sold the handgun to the confidential informant after the informant repeatedly insisted that he do so and played on his sympathy by stating that the informant needed a gun for protection from someone who recently raped his niece and was starting to harass him.  After rebuffing the informant for months, Graves finally gave in and sold him a gun.  The court denied Graves's motion, stating that variance was not "necessary."

On appeal, Graves claims that the district court's failure to address directly his argument for imperfect entrapment means that the court did not consider it.  *See United States v. Gunter*, 620 F.3d 642, 645–46 (6th Cir.  2010) ("It is well established that, as part of its sentencing procedure, a court must consider all non-frivolous arguments in support of a lower sentence." ).  As a reviewing court, our task is to ask whether, based on the entire sentencing record, "we are satisfied that the district court fulfilled [its] obligation" to "conduct a meaningful sentencing hearing and truly consider the

defendant's arguments." *Id.* at 646.  We "focus less on what the transcript reveals that the court said and more on what the transcript reveals that the court did."  *Id.* Ultimately, with respect to within-Guidelines sentences, we must ensure that the record makes clear that the sentencing court "'listened to each argument,' 'considered the supporting evidence,' was 'fully aware' of the defendant's circumstances and 'took them into account' in sentencing him."  *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc) (quoting *Rita v. United States*, 551 U.S. 338, 358 (2007)).  A court's failure to address each argument "head-on" will not lead to automatic vacatur, and "we will vacate a sentence [only] if the 'context and the record' do not 'make clear' the court's reasoning." *United States v. Liou*, 491 F.3d 334, 339 n.4 (6th Cir. 2007) (quoting *Rita*, 551 U.S. at 358).

We review Graves's procedural challenge for an abuse of discretion, rather than for plain error (given his failure to properly preserve it at sentencing[1]), because the government has not asked for plain-error review.  *Cf. United States v. Martinez*, 432 F. App'x 526, 533 (6th Cir. 2011); *United States v. Escalon-Velasquez*, 371 F. App'x 622, 623–24 (6th Cir. 2010).  *See generally United States v. Williams*, 641 F.3d 758, 770–73 (6th Cir. 2011) (Thapar, J., concurring).

Judged by these standards, we conclude that the district court did not abuse its discretion.  To be sure, the district court never mentioned at the sentencing hearing the terms "sentencing entrapment" or "imperfect entrapment."  Nor did it address the circumstances under which Graves sold the gun to the confidential informant, specifically the informant's repeated requests that Graves supply him with a gun for purposes of personal protection.  The district judge would have done well to expressly mention why, in his view, the government's obvious encouragement on the firearm charge was not a significant enough reason for imposing a below-Guidelines sentence.

---

[1]In response to the district court's *Bostic* question, defense counsel responded, "Your honor, in the abundance of caution I just want to reiterate that Mr. Graves wishes to preserve your denial of his motion for a variance for appeal."  While the response did preserve the denial of the motion—a ruling Graves does not challenge—it was not sufficient to preserve the challenge that the court failed to *explain* its denial.  *Cf. Vonner*, 516 F.3d at 390 (noting that the *Bostic* question operates best to give parties a chance to preserve challenges to the adequacy of the court's *explanation* for rejecting sentencing arguments).

Nevertheless, because the sentencing record "make[s] clear" the court's reasons for not granting a variance based upon imperfect entrapment, the failure to address the argument "head-on" does not require us to vacate the sentence. *Liou*, 491 F.3d at 339 n.4.  It is clear from the record that the district court believed a Guidelines sentence was required in this case.  After Graves's allocution, during which he stated only that he apologized for taking up the court's time, the district judge questioned Graves extensively about the offenses.  Although Graves lived with his wife and two children in Detroit, he decided to travel back and forth to Lansing to work for Taylor apparently because he was unable to find a job in southeastern Michigan, a justification the court found "a little farfetched."  Graves was on supervised release for an earlier federal drug offense when he started working at the store.  One condition of his release was that he stay within the Eastern District of Michigan—Lansing is in the Western District— and Graves knew it.  He thus wilfully violated the terms of his release by leaving the Eastern District to work at the store.  Moreover, Graves was unable to explain why he continued working for Taylor after he learned about the illegal activity, stating only that, by that time it was "too late.  I was already involved and [the store] had got raided already[,]" which explains nothing.  Graves thus engaged in extensive criminal activity, despite the various roadblocks that stood in his way—having to leave his wife and kids at home for extended periods of time, travel from Detroit to Lansing, and violate the terms of his supervised release to do so.  In the district court's view, based on these circumstances, a variance for *any* reason, including by implication imperfect entrapment, was not "necessary" to fulfill any sentencing goal.  *See* 18 U.S.C. § 3553(a).  The record thus makes clear that the district court considered Graves's argument for a variance and rejected it.  It did not abuse its discretion by declining to expressly address Graves's request for leniency on the basis of imperfect entrapment.

IV.

For these reasons, we affirm the judgments of the district court.