NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0480n.06

Case No. 13-2629

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
Jul 01, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| LUIS EDWARDS, | ) | |
| | ) | **OPINION** |
| Defendant-Appellant. | ) | |

BEFORE: MERRITT, GIBBONS, and DONALD, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Luis Edwards pled guilty to conspiracy to possess with intent to distribute 500 grams or more of cocaine and 28 grams or more of cocaine base. At sentencing, the court increased Edwards's offense level by four points, pursuant to USSG § 3B1.1(a),[1] for being an "organizer or leader of a criminal activity that involved five or more participants." The court also found that Edwards had frivolously denied being an organizer or leader and therefore decided not to grant Edwards an offense-level reduction for acceptance of responsibility. On appeal, Edwards challenges the court's imposition of the organizer/leader enhancement and the court's decision not to grant him credit for acceptance of responsibility. Edwards also challenges the procedural reasonableness of his sentence on several grounds: that the court did not adequately address his arguments for a variance, that the court did not

---

[1] In this opinion, all citations to the Guidelines refer to the 2013 version of the Guidelines Manual. Section 1B1.11(a) instructs the court to use the version of the Guidelines Manual that was in effect on the date that the defendant was sentenced. The 2013 Guidelines Manual took effect on November 1, 2013. Edwards was sentenced on November 25, 2013.

adequately address the 18 U.S.C. § 3553(a) sentencing factors, and that the court did not provide a reasoned basis for its sentencing decision. For the reasons set forth below, we affirm Edwards's sentence.

I.

On October 20, 2012 at 1:38 pm, Edwards sent a text message to a person known as Ricky. Edwards and Ricky exchanged several text messages back and forth over the next couple of days. At some point between October 22 and October 24, 2012, Ricky called Edwards and asked him to pick up some cocaine in Ohio. Edwards was to be paid $1,500 if he picked up the cocaine himself. Edwards said that he could not go himself because he had plans to celebrate his birthday, but he called a friend who agreed to go pick up the cocaine. After contacting his friend, Edwards sent a text message to Ricky. Edwards gave the friend directions to two locations in Columbus, Ohio, where the cocaine would be picked up.

The friend and another person drove to Columbus, stayed overnight, and picked up three packages of cocaine there at two locations. Phone records indicate numerous calls back and forth between Edwards and his friend, and between Edwards and two Ohio numbers, on October 24, 2012. Edwards's friend who was picking up the cocaine did not have contact by phone with the two Ohio numbers.

On October 24, on their way back to Lansing, Michigan, the friend and the person traveling with the friend were stopped by a sheriff's deputy while traveling on westbound I-96. During a search of the vehicle, police discovered three packages containing cocaine. Both occupants of the vehicle agreed to cooperate with the Michigan authorities by delivering the cocaine to "Cockroach," who was subsequently identified as Edwards.

One of the now-cooperators contacted Edwards to arrange delivery, and Edwards said that he would send someone to get the cocaine from them. The person who came to pick up the

cocaine was Israel Mendez. Edwards maintains that he did not know Mendez and that someone else, not he, called Mendez to direct him to pick up the cocaine. Phone records indicate that the first contact between Edwards's phone and Mendez's phone was initiated by Mendez, at 6:49 pm on October 24.

At a Rite-Aid parking lot in Lansing, Michigan, the cooperator gave Mendez a black bag containing the cocaine. Mendez drove off and was stopped by Michigan State Police a short time later on southbound I-69 in Charlotte, Michigan. Mendez consented to a search of his vehicle, in which police found three packages of cocaine, totaling 2.66 kilograms, one or more bags of cocaine base, totaling 131.77 grams, and three cellular telephones, one of which Mendez had used to contact the cooperator to arrange the pickup. On one of Mendez's phones, investigators discovered numerous text messages between Edwards and Mendez. Among other things, Edwards sent directions to Mendez, and Mendez informed Edwards what motel room he was staying in. The most recent text message to Edwards on Mendez's phone was an unsent draft message that read "They pull me o".

Telephone records introduced by the government at sentencing demonstrate the extensive contacts between Edwards and the other conspirators. Edwards's phone number ending in 0252 had 19 contacts (*i.e.*, calls plus text messages) with the cooperator. Edwards's phone number ending in 4786 had 200 contacts with the cooperator, 25 contacts with Mendez, 31 contacts with the Ohio number beginning 740, 20 contacts with the Ohio number beginning 614, and 61 contacts with Ricky. By contrast, the cooperator had three contacts with Mendez and zero contacts with Ricky or either of the Ohio numbers. And Mendez had zero contacts with Ricky. When asked who the "hub of these communications" among the conspirators was, the FBI

analyst called by the government to testify about the telephone records identified Edwards as the "common factor" in the communications.

On March 5, 2013, a grand jury indicted Edwards on two counts: (1) conspiracy to possess with intent to distribute 500 grams or more of cocaine and 28 grams or more of cocaine base, in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 841(b)(1)(B)(ii) and (iii); and (2) aiding and abetting possession with intent to distribute those drugs, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(B)(ii) and (iii), and 18 U.S.C. § 2. Edwards pled guilty to Count 1; the government agreed to dismiss Count 2 and, provided that Edwards complied with the necessary criteria, not to oppose Edwards's request for an offense-level reduction for acceptance of responsibility.

Edwards's Presentence Investigation Report (PSR) set out a criminal history category of I and a base offense level of 32, which both the government and Edwards accepted. The PSR stated that Edwards should receive a four-level increase under USSG § 3B1.1(a) for being an organizer or leader of criminal activity that involved five or more participants, because Edwards had directed the activities of others and recruited participants for the offense. The PSR also recommended that Edwards receive a three-level reduction for acceptance of responsibility under USSG § 3E1.1(a)–(b). Edwards objected that the § 3B1.1 enhancement should not apply because he had not had an aggravating role and because the offense did not involve five or more participants. Edwards further objected that because the § 3B1.1 enhancement did not apply, he met the "safety valve" criteria set out in § 5C1.2 and therefore was entitled to an additional two-level reduction pursuant to § 2D1.1(b)(16).

At sentencing, the court concluded that Edwards had been a leader or organizer of a conspiracy involving five or more people and therefore adopted the four-level increase under

§ 3B1.1(a) as set out in the PSR.  The court further concluded that in contesting the leadership-role enhancement, Edwards had frivolously denied relevant conduct, and the court therefore refused to grant Edwards an offense-level reduction for acceptance of responsibility.  As a result, the court found that Edwards's final offense level was 36.  Along with his criminal history category of I, this corresponded to a guideline range of 188 to 235 months.

After imposing a sentence of 188 months, the court asked Edwards's counsel whether he had "any legal objections to the sentence imposed, other than the ones already stated on the record," as required by *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004).  Edwards's counsel stated that his only objections were the ones that he had already raised: "the leadership role assessment, the denial of acceptance of responsibility, and the denial of the downward variance."

Edwards raises these arguments again on appeal: he challenges the court's imposition of a four-point offense-level increase for being an organizer or leader, and he challenges the court's decision not to grant Edwards an offense-level reduction for acceptance of responsibility.  He also challenges the procedural reasonableness of his sentence on several grounds: that the court did not adequately address his arguments for a variance, did not adequately address the 18 U.S.C. § 3553(a) sentencing factors, and did not provide a reasoned basis for its sentencing decision.

## II.

We first consider whether the district court erred in imposing on Edwards a four-level aggravating-role enhancement for being "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  USSG § 3B1.1(a).  We review this determination deferentially because the district court is better positioned to evaluate the

factual nuances relevant to the enhancement. *United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013).

Certainly the district court did not err in finding that the criminal activity in Edwards's case involved five or more participants. Counting Edwards himself, his friend (turned government cooperator) who drove to Columbus to retrieve the cocaine, his friend's travel companion, at least two people from whom they picked up the cocaine at two different locations in Columbus, Mendez, and Ricky, there were at least seven participants. Application Note 1 to § 3B1.1 makes clear that a person "need not have been convicted" of the offense to be considered a "participant" for Guidelines purposes. Application Note 1 further makes clear that the fact that Edwards's friend and his travel companion decided to cooperate with the government after they had been caught with the cocaine does not mean that they were not "participants" for Guidelines purposes, as they were still "criminally responsible for the commission of the offense."

Whether Edwards was an organizer or leader is somewhat more difficult; the lines between leader or organizer and manager or supervisor can be blurry. *See United States v. Bahena*, 223 F.3d 797, 804 (8th Cir. 2000). Application Note 4 to § 3B1.1 sets out several criteria for the court to weigh in determining whether a person had a leadership or organizational role justifying a four-level enhancement, as opposed to a managerial or supervisory role that would equate to a three-level enhancement:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

When viewed in light of these factors, the record adequately supports the district court's determination that Edwards was an organizer or leader. Edwards acknowledged that he exercised decision making authority and control over others in the scope of the conspiracy. At his plea hearing, he admitted that he had directed two people to pick up the cocaine in Columbus. Edwards also instructed Mendez where to go in order to pick up the cocaine in Lansing. Although Edwards protests that "Mr. Mendez worked for the other guy," Edwards had extensive communications with Mendez during the time surrounding Mendez's pickup of the cocaine, and it was Edwards to whom Mendez had begun composing an unsent text message reporting "They pull me o" when Mendez was stopped by police with the cocaine.

Edwards argues that "he was acting to assist Ricky, the leader and organizer, not the other way around," but "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." USSG § 3B1.1 cmt. n.4. Even if Ricky was a leader and organizer, the evidence was sufficient to find that Edwards was one, too.

Moreover, in terms of the nature and degree of participation, Edwards's role was essential and extensive. Even though he was not physically present for the transfer and transportation of the cocaine, he was the hub of the communications among all of the conspirators; virtually all of the telephone calls and text messages flowed through him. Edwards's involvement appears to have been crucial to every step of the conspiracy, from the initial contact with Ricky, to arranging the details of the pickup of the cocaine in Columbus, to setting up the drop-off of the cocaine to Mendez in Lansing.

Our court has upheld four-level leader-organizer enhancements in similar factual contexts. In *United States v. Castro*, 908 F.2d 85, 90 (6th Cir. 1990), we found that the district court did not abuse its discretion in concluding that Castro was an organizer or leader of the

conspiracy to distribute cocaine, where Castro had "directed other members of the conspiracy to transport cocaine from Miami and elsewhere to various areas of the United States including Detroit, and, on at least one occasion, from Los Angeles to New York." In *United States v. Gibson*, 165 F. App'x 421, 422–23 (6th Cir. 2006) (per curiam), we upheld a four-level leader-organizer enhancement where the defendant had recruited and used two individuals to transport cocaine and had set up a drug deal involving himself and several other people. And in *United States v. Schultz*, 14 F.3d 1093, 1099 (6th Cir. 1994), we found that "[o]rganizing and coordinating an interstate . . . scheme of distribution that brings contraband into a community for distribution on a continuing basis should be sufficient to qualify a single individual as an 'organizer' of criminal activity."

Although *Castro* and *Schultz* involved multiple shipments of drugs, Edwards's case involved only one shipment of cocaine. Nevertheless, the rapidity with which Edwards was able to arrange the shipment of cocaine by contacting and coordinating the movements of at least five different criminal conspirators in multiple states—within a short time after communicating with Ricky, the alleged boss, according to Edwards—is sufficient for the district court to have found by a preponderance of the evidence that it was not the first time Edwards had engaged in such conduct. *See, e.g.*, *United States v. Gates*, 461 F.3d 703, 707–08 (6th Cir. 2006) (upholding the district court's use of a preponderance of the evidence standard for sentencing purposes). Indeed, at sentencing, the district court stated that "[t]he assertion that this was a single occasion involving doing a favor for a friend just doesn't wash in light of the mountain of evidence . . . that Mr. Edwards was an organizer, leader . . . ."

Applying a deferential standard of review, we cannot conclude that the district court erred in imposing a four-level § 3B1.1(a) enhancement upon Edwards for being an organizer or leader.

III.

We next consider Edwards's challenge to the district court's decision to deny him an offense-level reduction for acceptance of responsibility under USSG § 3E1.1. Because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility[,] . . . the determination of the sentencing judge is entitled to great deference on review." USSG § 3E1.1 cmt. n.5. We therefore review for clear error a district court's decision to deny a defendant an offense-level reduction for acceptance of responsibility. *United States v. Genschow*, 645 F.3d 803, 813 (6th Cir. 2011) (citing *United States v. Webb*, 335 F.3d 534, 537–38 (6th Cir. 2003)). "A factual finding is clearly erroneous 'when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Ward*, 506 F.3d 468, 472 (6th Cir. 2007) (quoting *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006)). A defendant bears the burden of proving his acceptance of responsibility by a preponderance of the evidence. *United States v. Bacon*, 617 F.3d 452, 458 (6th Cir. 2010). A guilty plea does not by itself entitle the defendant to an offense-level reduction for acceptance of responsibility. USSG § 3E1.1 cmt. n.3; *see also, e.g.*, *United States v. Smith*, 918 F.2d 664, 669 (6th Cir. 1990) (per curiam). "[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." USSG § 3E1.1 cmt. n.1(A).

In this case, the district court found that Edwards had frivolously denied conduct relevant to the leadership-role enhancement and therefore denied him credit for acceptance of responsibility. A close review of the statements made by Edwards's counsel at sentencing illuminates why the court reached this conclusion. Edwards's counsel asserted, in part, that

> essentially what you have is [a] drug deal in which Mr. Edwards was initially supposed to be the person that was picking it up. . . . I think that he was supposed to be a courier, and because he decided not to do it, it put him in the awkward

> position of having to redirect people, to say okay, I'm coming now. . . . [I]t looks like he is doing a lot more directing than he actually is . . . . I submit that there is another person that's responsible that is actually the leader or organizer, but it's not Mr. Edwards.

The government then introduced the extensive phone record evidence showing that Edwards was at the center of the communications among the participants. Edwards's counsel stated that he stood behind his previous assertions. The court said to Edwards's counsel that "[i]t would appear to me, based on the chart, that Mr. Edwards is the hub of the communication system here. That's not typical of mules, is it?" Edwards's counsel said,

> It wasn't as if Mr. Edwards said well, I know a guy that can come and pick up. And I'll send him, it didn't work that way, actually Mr. Mendez contacted [Edwards]. . . . I think this is probably, and only a guess— . . . I think Ricky put Mr. Mendez in contact with Mr. Edwards because he was supposed to pick up the drugs.

The court noted that there was no evidence in the record to support this assertion and asked Edwards's counsel what basis he had for it. Edwards's counsel said, "I'm suggesting that there was contact outside of the records that we have here [and] somehow Mr. Mendez got Mr. Edwards' phone number. . . . That's what my client told me . . . ." Edwards's counsel reiterated that the drugs did not belong to Edwards; "he [was] just muling them." The court then weighed in:

> All right. Well, I mean this is perfectly clear to the Court, and I must say this is one of the more frivolous objections to an application of an organizer or leader I've heard. I mean the evidence here is not only by a preponderance of the evidence, but it's at least clear and convincing. Mr. Edwards is the hub of this communication system involving these drugs and the operative time frame between the 20th and 25th. And if there was any doubt as to who the important person was in this, why is Mr. Mendez, as he is being pulled over by the State Police, texting the defendant? . . . I'm not going to give you[r] client acceptance either, because he has frivolously denied relevant conduct. I mean these records are overwhelming evidence that he is the hub of this communication system. No one else is calling everybody else, other than your client.

It is true, as Edwards's appellate counsel contended at oral argument before this court, that for purposes of the acceptance-of-responsibility sentencing credit, there is a difference between arguments about the law and arguments about the facts. Non-frivolous challenges to a legal conclusion drawn from facts the defendant admits—for example, arguments about whether certain conduct fits within the meaning of a Guidelines provision—are protected and cannot serve as the basis for denying credit for acceptance of responsibility. *See, e.g.*, *United States v. Cook*, No. 13-5264, 2015 WL 1741318, at \*3 (6th Cir. Apr. 17, 2015); *United States v. Morrison*, 10 F. App'x 275, 285 (6th Cir. 2001); *United States v. Purchess*, 107 F.3d 1261, 1266–67 (7th Cir. 1997). Factual arguments are treated differently, though: a defendant who frivolously contests relevant facts can be denied credit for acceptance of responsibility, even if the arguments are made by the defendant's lawyer rather than the defendant himself. *Purchess*, 107 F.3d at 1266–67;[2] *see also United States v. Gonzalez-Coca*, 262 F. App'x 939, 942 (11th Cir. 2008) (per curiam) ("It is not clear error to conclude that Appellant failed to clearly

---

[2] In *Purchess*, the district court

> asked the defendant generally at the beginning of the sentencing hearing whether he had read and understood his attorney's objections to the PSR. Purchess indicated that the document had been read to him, but when the court asked Purchess if he had any further challenges to the PSR, he became confused, gave a contradictory answer and then told the court, "My English is not so good." After a recess lasting a few hours, which the court called to allow the defendant's attorney more time to explain the relevant documents to his client, the court again asked Purchess whether the documents had been read to him and whether he had further challenges. Purchess indicated that the documents had been read to him and that he had no further challenges.

107 F.3d at 1268–69. Purchess's attorney, however, made statements challenging the facts in the PSR. *Id.* at 1269. The Seventh Circuit suggested that in those particular circumstances, "the best course is for the court to determine if the defendant understands and agrees with his attorney's argument before using counsel's challenge as a basis for denying the defendant a reduction for acceptance of responsibility." *Id.* Finding the circumstances of Edwards's case to be materially distinguishable—Edwards did not, unlike Purchess, affirmatively indicate that he did not wish to present any further challenges—we decline to adopt that requirement here.

demonstrate an acceptance of responsibility for his offense when he stood silent while his counsel frivolously contested facts constituting relevant conduct . . . .").

Edwards's appellate counsel urges that Edwards's trial counsel was merely making legal arguments about the applicability of the leader-organizer enhancement to Edwards's conduct. We disagree. Edwards's trial counsel, instead of contenting himself with making legal arguments, which could not have been a basis for denying credit for acceptance of responsibility, made factual representations—apparently based on his client's statements to him—about the nature of the contacts among the participants. The district court concluded that these representations amounted to frivolously contesting the facts, and we do not think this conclusion was clearly erroneous. Other than saying "That's what my client told me," Edwards's counsel presented no evidence in support of his factual representation that Ricky put Mendez in contact with Edwards or that another person had a more extensive role in coordinating the activities among the participants. The lack of evidence supporting the factual representations itself suggests frivolity. *See Purchess*, 107 F.3d at 1268. Moreover, as the district court observed, these factual representations were at odds with the extensive cell phone record evidence placing Edwards at the center of the communications. We therefore affirm the district court's decision to deny Edwards credit for acceptance of responsibility.

IV.

Last, we turn to Edwards's arguments that his sentence was procedurally unreasonable because the district court failed to adequately address his arguments for a variance, failed to adequately address the § 3553(a) factors, and failed to provide a reasoned basis for its sentencing decision. In each instance we disagree.

A.

Under *Bostic*, the district court is required, "after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised." 371 F.3d at 872. This requirement "serve[s] the dual purposes of permitting the district court to correct on the spot any error it may have made and of guiding appellate review." *Id.* at 873 (alteration and internal quotation marks omitted). Once the district court asks the *Bostic* question, "[i]f a party does not clearly articulate any objection and the grounds upon which the objection is based, . . . then that party will have forfeited its opportunity to make any objections not previously raised and thus will face plain error review on appeal." *Id.* at 872–73. Plain error requires a showing of "(1) error (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)). "Only in exceptional circumstances will we find such error— only . . . where the error is so plain that the trial judge was derelict in countenancing it." *Id.* (alterations and internal quotation marks omitted).

After pronouncing Edwards's sentence, the district court complied with *Bostic* and asked the parties whether they had "[a]ny legal objections to the sentence imposed, other than the ones already stated on the record[.]" Edwards's counsel responded: "I guess just out of an abundance of caution, object to the leadership role assessment, the denial of acceptance of responsibility, and the denial of the downward variance as set forth in my memo and my arguments today." Edwards's counsel did not object to the adequacy of the court's treatment of his arguments, nor to the adequacy of the court's reasoned explanation for its sentencing decision. Indeed, the court

specifically asked Edwards's counsel, "Are you satisfied I've addressed all your arguments on the record?" Edwards's counsel responded, "I think you did."

Edwards's procedural-reasonableness arguments that the district court failed to adequately address the § 3553(a) factors and failed to provide a reasoned basis for its sentencing decision are therefore subject to plain error review, because Edwards did not raise these objections upon being asked the *Bostic* question.

Edwards's argument that the district court failed to adequately address his argument for a variance is also subject to plain error review, even though Edwards's counsel did reiterate his objection to the denial of the variance itself. In *Vonner*, this court held that even though the defendant had sought a downward variance at his sentencing hearing, he had failed, upon being asked the *Bostic* question, to object to the adequacy of the district court's explanation of why it rejected his arguments for a downward variance, and therefore "his right to challenge the adequacy of the court's explanation for the sentence"—distinct from his "right to appeal issues he had 'previously raised'"—was subject to plain error review. 516 F.3d at 384, 386. Edwards's substantive objection to the denial of a downward variance was an issue he had previously raised[3] and is distinct from his procedural objection, raised for the first time on appeal, to the adequacy of the court's explanation of why it did not grant a downward variance, which we therefore review for plain error. *United States v. Taylor*, 696 F.3d 628, 634 n.1 (6th Cir. 2012) ("In response to the district court's *Bostic* question, defense counsel responded, 'Your honor, in the abundance of caution I just want to reiterate that Mr. Graves wishes to preserve your denial

---

[3] *See United States v. Simmons*, 587 F.3d 348, 355 (6th Cir. 2009) ("[D]efense counsel clearly argued before the sentencing court that the disparate treatment of crack and powder cocaine requires a downward variance, and it is unnecessary for a party to repeat previously made objections in order to secure the lower standard of review on appeal," regardless of his answer to the *Bostic* question.).

of his motion for a variance for appeal.' While the response did preserve the denial of the motion—a ruling Graves does not challenge—it was not sufficient to preserve the challenge that the court failed to *explain* its denial.").

B.

In his sentencing memorandum and at the sentencing hearing, Edwards raised several arguments for a downward variance. He urged that his role in the offense had been "limited" and "non-violent." He emphasized that he was a first-time offender with zero criminal history points. He noted that he has two teenage daughters "whom he misses dearly" and he expressed his hope for "a chance to take care of his family again." Additionally, he said that he had a heart condition that "will make treatment and his incarceration more difficult."

"It is well established that, as part of its sentencing procedure, a court must consider all non-frivolous arguments in support of a lower sentence." *United States v. Gunter*, 620 F.3d 642, 645 (6th Cir. 2010). However, "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." *Rita v. United States*, 551 U.S. 338, 356 (2007). This court takes a "functional" approach, focusing "less on what the transcript reveals that the court said and more on what the transcript reveals that the court did." *Gunter*, 620 F.3d at 646. "A court's failure to address each argument head-on will not lead to automatic vacatur, and we will vacate a sentence only if the context and the record do not make clear the court's reasoning." *Taylor*, 696 F.3d at 634 (quoting *United States v. Liou*, 491 F.3d 334, 339 n.4 (6th Cir. 2007)) (alteration and internal quotation marks omitted).

The district court did address many of Edwards's arguments for a downward variance. The court considered and rejected his argument that he had had only a limited role in the offense: the court found that he had been the leader or organizer, was the "hub of this communication system," and had extensive involvement. The court also showed that it took into account

- 15 -

Edwards's lack of prior criminal convictions, stating that "he is accordingly, properly placed in Criminal History Category I, and that is a recognition that he doesn't have any prior record, his guidelines would be even higher if he did have a previous record." Furthermore, the court, by recommending that Edwards be placed into a facility that could evaluate his heart condition and deal with any of his medical issues, demonstrated that it had considered Edwards's argument for a lighter sentence because of his heart condition. The district court committed no error in addressing these arguments for a variance.

The court did not give any specific indication that it had considered Edwards's argument that he should receive a downward variance in order to take care of his daughters, aside from its general statement that "I have considered all of the defendant's arguments in support of his request for lower sentence." But Edwards had neither custody of his daughters (his ex-wife did), nor visitation, nor any contact at all since August 2010. Edwards stated that he did not believe his daughters even knew that he was incarcerated. Given the lack of evidence that Edwards would have contact with his daughters even if he were granted a shorter sentence, we conclude the district court did not err by failing to mention Edwards's argument on this point specifically at sentencing.

### C.

"Although there is no requirement that the district court engage in a ritualistic incantation of the § 3553(a) factors it considers, the district court's sentence should nonetheless reflect the considerations listed in § 3553(a)." *United States v. Chandler*, 419 F.3d 484, 488 (6th Cir. 2005) (alteration and internal quotation marks omitted) (citing *United States v. Washington*, 147 F.3d 490, 491–92 (6th Cir. 1998)). In Edwards's case the district court made clear that it recognized that its sentence must be "sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S. Code 3553(a)." The court listed the § 3553(a) factors and

discussed several of them as applied to Edwards's case. The court explicitly took account of the guideline range, as required by § 3553(a)(4). The court acknowledged the kinds of sentences available, per § 3553(a)(3). The court discussed the seriousness of the offense under § 3553(a)(2)(A). The court acknowledged Edwards's lack of criminal convictions, taking into account § 3553(a)(1), but also emphasized the need for adequate deterrence, under § 3553(a)(2)(B). And the court demonstrated that it had taken account of the need for the sentence to provide Edwards with needed medical care and correctional treatment in the most effective manner, as required by § 3553(a)(2)(D). Moreover, the court had already extensively discussed the nature and circumstances of the offense, per § 3553(a)(1), during its explanation of why Edwards would receive an offense-level enhancement for being a leader or organizer, and the court highlighted those facts again at sentencing. In sum, the district court adequately addressed the § 3553(a) factors.

D.

"Where the defendant . . . presents nonfrivolous reasons for imposing a [below-Guidelines] sentence . . . the judge will normally . . . explain why he has rejected those arguments." *Rita*, 551 U.S. at 357. As discussed above, the district court adequately addressed Edwards's arguments for a downward variance and adequately addressed the § 3553(a) factors as applied to his case. Having dealt with those considerations, the sentencing judge's decision to hand down a guideline sentence "will not necessarily require lengthy explanation"; "circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence." *Vonner*, 516 F.3d at 387 (quoting *Rita*, 551 U.S. at 356–57) (alteration and internal quotation marks omitted). Accordingly, in this case, the district court stated that "using the guidelines as advisory, the Court finds that a sentence at the low end of the guidelines as the Court has found them, is the

appropriate sentence, would provide just punishment for the offense, promote respect for the laws in our country and reflect the seriousness of the offense." The district court provided a reasoned basis for its sentencing decision and did not commit plain error affecting Edwards's substantial rights or the fairness and integrity of the proceedings.

V.

Edwards's sentence is affirmed.

**MERRITT, Circuit Judge, dissenting.** Here we continue along the well-worn path of the federal courts by imposing over-long sentences in the so-called War on Drugs. The court upholds a 15-year drug sentence for a first-time offender. It does so by affirming a debatable "organizer or leader" enhancement that added many years to the sentence and then added more years by denying Edwards an "acceptance of responsibility" deduction—all because at sentencing his lawyer contested the applicability of the enhancement. The 15-year sentence is much longer than necessary to deter this first-time offender from further violations but does deter defense lawyers from making reasonable arguments in defense of their clients.

In preparation for sentencing, Edwards provided a statement wherein he admitted involvement in the underlying offense. Notably, the initial presentence report did not contain a leadership role enhancement. Although a subsequent report recommended a 4-point "organizer or leader" enhancement, the Government's Response only recommended a 2-point enhancement. This revised report also recommended a 3-level reduction because the Defendant "clearly demonstrated acceptance of responsibility for the offense."

I do not believe that a criminal defendant's choice to object to the "organizer/leader" enhancement—when it was in dispute by various parties throughout the pendency of the case—is "frivolous." A reduction for accepting responsibility is supposed to be accorded to a criminal defendant who enters a guilty plea and "truthfully admits the conduct compromising the offense." U.S.S.G. § 3E1.1 app. n3. At the sentencing hearing, defense counsel objected to and argued against the 4-level "organizer or leader" enhancement, but Edwards had consistently admitted the offense conduct. He admitted having contacts with the other conspirators. His counsel only disputed that those contacts demonstrated that he was an organizer or leader.

Counsel did not deny any conduct. He only argued that Edwards' conduct did not suggest a leadership role.

The evidence regarding the significance and extent of those contacts was somewhat equivocal and should have been open for debate without being deemed a "frivolous objection" to relevant conduct. Simply put, Edwards did not deny any conduct. He only denied that his conduct should be characterized as a "leadership role."

Moreover, in this case we are combining an overly-long sentence with a gross waste of taxpayer funds. This man will apparently be deported back to Mexico only when he finishes his 15-year term. It seems clear to me that instead of paying approximately $250,000 for his incarceration in federal prison, he should be deported now. The Criminal division of the Department of Justice should open an immigration proceeding and deport him back to Mexico. The United States Attorney did not ask for this long sentence and should return him to his family back in Mexico as soon as possible.