**NOT RECOMMENDED FOR PUBLICATION**
File Name: 15a0197n.06

Nos. 13-6431/6454/6478/14-5685

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Mar 11, 2015*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| SHANE BEGLEY, TYANNA | ) | EASTERN DISTRICT OF KENTUCKY |
| BRANSTETTER, BRENDA EVERSOLE, | ) | |
| and ERMA MCGRAW, | ) | OPINION |
| | ) | |
| Defendants-Appellants. | ) | |

BEFORE:     DAUGHTREY, McKEAGUE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**     Beginning in January 2010 and continuing through January 2013, defendants took part in a conspiracy to distribute large amounts of high-grade methamphetamine in South Central Kentucky. The four defendants whose cases are consolidated here pled guilty and now appeal their sentences. Because we do not find that the district court either abused its discretion or erred in determining those sentences, we AFFIRM.

## I.     BACKGROUND

In the summer of 2012, the Laurel County, Kentucky, Sheriff's Office began receiving complaints about increased methamphetamine trafficking in the region. Shane Begley, Deborah Vaughn, and Robert L. Sisco were identified as individuals who were bringing large quantities of high-grade methamphetamine in from Georgia, beginning around January 2010. Brenda

Eversole was identified as a major distributor who was supplied by Begley, and law enforcement soon determined that other individuals were responsible for further distributing the drug and helping to procure it from out of state. After an investigation, nine individuals were indicted for conspiring to knowingly distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846: Begley, Sisco, Steve Floyd, Eversole, Vaughn, Tyanna Branstetter,[1] Chelsea Carson, Debbie Collier, and Erma McGraw.

Begley supplied most of the methamphetamine distributed during the course of the conspiracy. He made numerous trips to Georgia and other locales to buy methamphetamine, often taking co-conspirators—including Vaughn and Carson—with him and at times having unindicted co-conspirators drive for him. Begley bought anywhere between a half ounce to four ounces per trip, traveling approximately once a week during the last six months of the conspiracy. Begley then kept half of the drugs for himself and sold half to Eversole and other middlemen, who in turn sold the drugs to still other dealers as well as end users. He made approximately thirty-five trips to supply Eversole. Ultimately, Begley admitted to distributing between 1.5 and 5 kilograms of methamphetamine. Begley pled guilty to the indictment and was sentenced to 240 months of imprisonment.

Eversole was a local drug trafficker supplied primarily by Begley. She came into the conspiracy around September 2012 and bought at least two, and sometimes up to three, ounces of methamphetamine from Begley approximately every four days until her arrest in January 2013. She would pay Begley in advance for the drugs, and after receiving the drugs would distribute them to co-conspirators including Floyd, Branstetter and McGraw, keeping a portion for her own use. Eversole was arrested in March 2013, ultimately pled guilty to the indictment without a written plea agreement, and was sentenced to 190 months of imprisonment. The court

---

[1] Defendant Branstetter is not a known relative of Judge Jane Branstetter Stranch.

attributed at least 1.960 and up to 2.060 kilograms of methamphetamine to Eversole, based on her statements and those of other co-conspirators.

Branstetter was a lower-level distributor who regularly bought methamphetamine from Eversole beginning in the summer of 2012 and continuing until January 2013. Branstetter bought several 3.5 gram "eight-balls" of methamphetamine a week—approximately 3.5 to 7 grams daily—selling some of the drugs to support her habit and using the other portion herself. She knew that Eversole's main supplier was Begley. Branstetter pled guilty to a lesser-included offense of conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846, and was sentenced to 145 months of imprisonment. In her plea agreement she admitted that she was responsible for the distribution of between 350 and 500 grams of the drug.

McGraw also regularly bought methamphetamine from Eversole beginning in the summer of 2012 through October 2012. During that period she bought approximately one 3.5 gram "eight ball" per week for approximately two and a half months, after which point she switched to another supplier. She, too, used a portion of the drugs and sold the other portion to fund her own habit. McGraw pled guilty to a lesser-included offense of conspiracy to distribute 50 grams or more of methamphetamine and admitted she was responsible for the distribution of approximately 200-350 grams of the drug. For her part in the conspiracy, McGraw received a sentence of 84 months of imprisonment.

Begley, Eversole, Branstetter and McGraw now appeal their sentences. Their cases were consolidated and we consider them in turn.

## II.    ANALYSIS

### A.  Begley's Sentence Enhancement

Begley contests the district court's application of a 4-level enhancement to his sentence for conspiracy to distribute 500 grams or more of methamphetamine, arguing that he should only be subject to a 3-level enhancement pursuant to USSG § 3B1.1(b) and thus his sentence was procedurally unreasonable.  We find his argument to be without merit.

A sentence would be procedurally unreasonable if the court "select[ed] a sentence based on clearly erroneous facts."  *Gall v. United States*, 552 U.S. 38, 51 (2007).  The 4-level enhancement was applied based upon the court's finding that Begley was an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  USSG § 3B1.1(a).  A court's factual findings regarding the application of an enhancement under § 3B1.1 are reviewed for clear error, and its legal conclusions regarding that enhancement are also subject to deferential review.  *United States v. Washington*, 715 F.3d 975, 982-83 (6th Cir. 2013).  "The prosecution bears the burden of proving leadership by a preponderance of the evidence."  *United States v. Wright*, 747 F.3d 399, 412 (6th Cir. 2014).

To qualify for such an enhancement, the defendant must have been the organizer or leader of "one or more other participants."  USSG § 3B1.1, cmt. n.2. Under the Sentencing Guidelines, factors to consider when determining if a defendant is such a leader include: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."  *Id.* at cmt. n.4; *United States v. Sierra-Villegas*, __F.3d__, No. 13-2513, 2014 WL 7271420, at *6 (6th Cir.

Dec. 23, 2014). When considering if an organization is "otherwise extensive," "all persons involved during the course of the entire offense are to be considered." USSG § 3B1.1, cmt. n.3.

At Begley's sentencing hearing, the government relied in part on the testimony of Carson, Begley's former girlfriend and one of his co-defendants. Carson testified that she made several trips to Georgia and Manchester, Kentucky with Begley for the purpose of buying methamphetamine, and that he then sold a quantity of the drugs to Eversole, keeping half for himself. She stated that Begley bought between two and four ounces at a time, for which he paid at least a thousand dollars an ounce, at times going down to Georgia twice a week. Carson also confirmed that Begley was in charge of arranging these trips, paying for the drugs, distributing the drugs to others in the region, and taking the proceeds from his sales to buy more drugs. Occasionally Carson would go by herself to pick up the drugs, after Begley had made the arrangements and given her the money. Carson also admitted that Begley once had Carson pick up money and deliver it to Collier. At other times, additional individuals traveled with Carson and Begley to Georgia, driving or otherwise helping with the trip in return for payment in the form of methamphetamine.

Although Begley made multiple objections to his presentence report protesting the amount of drugs attributable to him as well as the 4-level enhancement for his leadership role, after Carson's testimony at the sentencing hearing, Begley's counsel conceded that at least five persons were involved in the drug conspiracy: "Yes, there were participants. Yes, there were five." R. 275, Page ID 1149. Moments earlier he had admitted that "I can candidly tell you the best I can get it down to is five"—even as he attempted to argue that Begley was "more of a free agent" and a "supplier of the conspiracy" rather than an organizer. R. 275, Page ID 1148-49. Begley also took the stand, claiming that he only ever sold drugs to Eversole, although he

admitted that he knew she then sold to others. Begley also argues here that he did not organize his co-conspirators, but concedes that he directed the activities of Carson and Collier.

Based on the information in the presentence report and Carson's testimony—both of which the court credited—the court found that a preponderance of the evidence showed that Begley was an organizer or leader of a criminal activity and thus subject to the 4-level enhancement. It found that Begley clearly exercised control over at least one person, retained a large share of the proceeds when he kept half of the drugs for himself, made all of the arrangements for purchasing the drugs in Georgia and Kentucky, and then bought the drugs. *See* USSG § 3B1.1, cmt. n.4. As the court stressed, Begley "only ha[d] to manage or supervise one other person" in a criminal activity involving five or more participants to be eligible for the enhancement under the Guidelines. *See* § 3B1.1, cmt. n.2. Given the evidence before the court and the record before us, we determine that there was no error in the court's findings or its application of the enhancement. Begley's sentence was procedurally reasonable.

## B. The Quantity of Drugs Attributable to Eversole

Eversole argues that her sentence is procedurally unreasonable because the court did not properly calculate the amount of methamphetamine that should be attributed to her under the Guidelines and so miscalculated her sentence. Her argument is also unpersuasive.

A sentence would be procedurally unreasonable if the court "fail[ed] to calculate (or improperly calculat[ed]) the Guidelines range" or "select[ed] a sentence based on clearly erroneous facts." *Gall*, 552 U.S. at 51. A district court's factual finding of drug quantity is reviewed for clear error. *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008). Where a defendant is part of a "jointly undertaken criminal activity" involving drugs, "the defendant is accountable for all quantities of contraband with which [s]he was directly involved and . . . all

reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that [she] jointly undertook." USSG § 1B1.3 cmt. n.2. When a defendant obtains drugs from a supplier for personal use as well as distribution in the context of a conspiracy, those drugs are "properly included . . . in determining the quantity of drugs that the defendant knew were distributed by the conspiracy." *United States v. Page*, 232 F.3d 536, 542 (6th Cir. 2000).

Where the exact amount of drugs cannot be determined, "an estimate will suffice, but . . . a preponderance of the evidence must support the estimate." *Jeross*, 521 F.3d at 570 (quoting *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990)). In making its estimate, the court must "conclude that the defendant is more likely than not *actually* responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible." *Id.* (quoting *Walton*, 908 F.2d at 1302). An estimate "may be based upon physical evidence (such as seized drugs) or testimonial evidence." *Id.*; *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004) (relying on testimonial evidence). "[T]he evidence supporting the [sentencing court's] estimate must have a minimal level of reliability beyond mere allegation, and the court should err on the side of caution in making its estimate." *United States v. Russell*, 595 F.3d 633, 646 (6th Cir. 2010) (internal citations and quotation marks omitted).

There is no reason to conclude that the court erred in calculating the quantity of methamphetamine attributable to Eversole. At her sentencing hearing, Eversole did not initially object to the information in the presentence investigation report, and the court adopted its findings and guidelines calculations. Shortly thereafter, however, Eversole's attorney did object to the quantity of methamphetamine used to determine Eversole's guidelines, arguing that Eversole was under the influence of methamphetamine when she made her previous statement to law enforcement personnel that she was receiving approximately two ounces a week of the drug.

Counsel argued that such an amount "doubles what she was actually getting," and that if the court subtracted the "large amount of methamphetamine that Ms. Eversole was using for herself, that would take her down under 1.5 kilograms of methamphetamine," and reduce her base offense level from 32 to 34. R. 268, Page ID 1044-45. The court then heard testimony from the probation officer, who credited Eversole's initial statement to police, which was corroborated by Carson and Vaughn, to the effect that Eversole received two ounces of methamphetamine from Begley approximately every four days. As calculated in the presentence report, two ounces, or 56 grams, was multiplied by 35, the approximate number of occasions on which Eversole received drugs from Begley during the course of the conspiracy, resulting in a total of 1.960 kilograms. This amount falls within the 1.5 to 5 kilogram range, which had a base level of 34 under the version of USSG § 2D1.1(c) in effect in 2012.

After considering this information, the court credited the probation officer's corroborated testimony, overruled the objection, and found the calculations to be accurate and the base offense level of 34 to be appropriate. The amount of methamphetamine attributed to Eversole was not inappropriate and her sentence is procedurally reasonable.

## C. The Procedural and Substantive Reasonableness of Branstetter's Sentence

Branstetter argues on appeal that her sentence of 145 months is procedurally and substantively unreasonable because the court failed to consider all of the factors of 18 U.S.C. § 3553(a), such as her personal characteristics—in particular her drug addiction—as well as her relatively minor role in the conspiracy, resulting in a sentence that was greater than necessary to satisfy the goals of the statute. She argues that proposed amendments to the sentencing guidelines as well as policies introduced by Attorney General Holder in August 2013 should have been considered in calculating her sentence, and that the safety valve reduction could have

been applied, despite her substantial criminal history.  She also points to disparities between her sentence and those of her co-defendants, as well as a disparity between her sentence and that of other drug offenders with similar criminal histories.  We find these arguments to be unavailing.

In sentencing a defendant, the district court calculates the applicable Sentencing Guidelines range, uses it as a benchmark, and then considers all of the 18 U.S.C. § 3553(a) factors, making an individualized assessment based on the facts presented and without presuming the reasonableness of the Guidelines range.  *Gall*, 552 U.S. at 49-50; *see also United States v. Booker*, 543 U.S. 220, 258-59 (2005) (holding that the Guidelines are advisory, not mandatory, standards).  The court should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a).  In doing so, the sentencing judge should consider

> (1) Offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution.

*Rita v. United States*, 551 U.S. 338, 347-48 (2007) (quoting 18 U.S.C. § 3553(a)).  We review a district court's sentencing decision to determine if it is reasonable, applying an abuse of discretion standard.  *Gall*, 552 U.S. at 46.  There are both procedural and substantive components to a review of reasonableness.  *Gall*, 552 U.S. at 51; *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007).  Sentences within the applicable Guidelines range are afforded a presumption of reasonableness.  *United States v. Vowell*, 516 F.3d 503, 509 (6th Cir. 2008).

### 1.  Procedural reasonableness

A sentence would be procedurally unreasonable if the court "fail[ed] to calculate (or improperly calculat[ed]) the Guidelines range, treat[ed] the Guidelines as mandatory, fail[ed] to

consider the § 3553(a) factors, select[ed] a sentence based on clearly erroneous facts, or fail[ed] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. To conform to the requirements of procedural reasonableness, the sentencing judge must "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 551 U.S. at 356; *United States v. Klups*, 514 F.3d 532, 537 (6th Cir. 2008). The extent to which the reasoning must be articulated "varies according to context." *Klups*, 514 F.3d at 537. "[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation," *Rita*, 551 U.S. at 356; however, when a judge "imposes a sentence outside the Guidelines, the judge will explain why he has done so." *Id.* at 357. Similarly, "[w]hen the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence . . . the judge will normally go further and explain why he has rejected those arguments." *Id.* at 357; *Klups*, 514 F.3d at 537. Even so, "[w]hen the judge makes only a 'conclusory reference' to the § 3553(a) factors and does not address the defendant's arguments regarding application of those factors, then this court will find the sentence unreasonable." *Klups*, 514 F.3d at 537.

Where a defendant fails to object to her sentence during the sentencing hearing after being properly invited to do so by the judge, any arguments presented on appeal will be reviewed for plain error. *United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004). This rule applies only to objections or arguments concerning procedural unreasonableness. *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc). Branstetter made no objections when asked; therefore she must demonstrate "(1) error (2) that 'was obvious or clear,' (3) that 'affected defendant's substantial rights[,]' and (4) that 'affected the fairness, integrity, or public reputation

of the judicial proceedings.'" *Id.* at 386 (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

There is no indication in the record that the sentencing judge committed plain error during Branstetter's sentencing. Rather, the sentencing judge calculated the Guidelines range properly, considered the range in light of the § 3553(a) factors, took Branstetter's arguments into consideration, and explained his reasons for imposing the 145-month sentence. First, the court adopted the Guidelines calculations and related findings from Branstetter's presentence investigation report, to which Branstetter offered no objection. The mandatory minimum sentence for the offense to which Branstetter pled was 120 months, pursuant to 21 U.S.C. §§ 841(b)(1), 851. The judge determined that the base level offense was 30 and applied a 3-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1, arriving at a total offense level of 27. Her criminal history category of VI, as documented in her presentence investigation report, considered in combination with the total offense level of 27, resulted in a sentencing guidelines range of 130-162 months.

During sentencing, Branstetter's attorney asked the court to consider a variance, taking into account the fact that her criminal history included some lesser charges such as traffic offenses that, if absent, would have decreased her criminal history category from VI to V. Counsel requested that the court apply the mandatory minimum of 120 months. Branstetter also personally asked the court to take her history of drug addiction into consideration. After listening to the arguments of Branstetter and her attorney, the court announced that he "[didn't] believe that a departure based upon overstated criminal history would be appropriate," finding her criminal history to be lengthy and serious for someone of her age and likely related to her long-term drug addiction. R. 281, Page ID 1347.

Specifically, the court focused on Branstetter's convictions for burglary, theft, and the manufacture of methamphetamine, the latter two of which occurred while her young children were present. He also considered a charge for failure to maintain required car insurance, and noted that Branstetter had initially been charged with a failure to use a child restraint device in a vehicle, although that charge was dismissed. Viewing these charges collectively as proof that Branstetter showed a disregard for the well-being of her children, the court initially noted that these factors suggest a sentence near the higher end of the guidelines. Ultimately, the court took into account the nature and circumstances of the offense, other "information that was provided at the bench," the need for just punishment, deterrence, and the protection of the public, and imposed a sentence of 145 months and recommended referral to a 500-hour residential drug treatment program.

The record does not contain evidence of an obvious or clear error that affected Branstetter's substantial rights or the fairness or integrity of the proceedings; therefore we find no basis for Branstetter's claim of procedural unreasonableness. *Vonner*, 516 F.3d at 386 (quoting *Gardiner*, 463 F.3d at 459). The court considered Branstetter's arguments regarding her personal characteristics, addressing the arguments regarding her traffic violations and her need for a drug-treatment program during incarceration. While the court did not discuss Branstetter's role in the conspiracy, her role was documented in the presentence report, which the court adopted. This omission does not rise to the level of suggesting that the judge had no "reasoned basis" for the sentence, in light of his detailed commentary on her history and circumstances. *Rita*, 551 U.S. at 356.

The court's detailed consideration of Branstetter's criminal record also led to its conclusion that her criminal history was not "overstated" and that she was ineligible for the

safety valve reduction under 18 U.S.C. § 3553(f). Branstetter correctly argues that policies issued by Attorney General Eric Holder as well as proposed amendments under the Smarter Sentencing Act of 2013 could lead courts to impose a lower sentence than she received. But here, Branstetter's criminal history rendered her ineligible for the relief suggested by these policies, and the proposed amendments were not enacted at the time of her sentencing. Branstetter has not shown that her sentence was plainly erroneous.

## 2. Substantive Reasonableness

The substantive reasonableness of a sentence is also reviewed under an abuse of discretion standard. *Gall*, 552 U.S. at 51. When conducting such a review, the court should "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* A sentence may be substantively unreasonable if the court "selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). We also consider the total length of the sentence. *Klups*, 514 F.3d at 536.

Branstetter has not rebutted the presumption that her 145-month sentence—well within the Guidelines range—is substantively reasonable. As discussed above, the judge heard from Branstetter and her attorney, addressed their arguments, considered the appropriate § 3553(a) factors, and explained the sentence primarily based on the criminal history contained in the presentence investigation report and information Branstetter provided to him during the sentencing hearing. The court did not give the criminal history undue weight, as Branstetter argues, but referred to the criminal history information in the presentence report in order to explain the reasons for denying her request for a downward variance, instead imposing a

sentence within the Guidelines range. For these reasons, we do not find Branstetter's sentence to be substantively unreasonable.

Branstetter is correct, however, in observing that the Guidelines have been amended recently and that her sentence could be reduced in light of these amendments. This change does not render the sentence imposed erroneous or an abuse of discretion. In order to seek relief under the amended Guidelines, she may move the district court for a reduction of sentence under 18 U.S.C. § 3582(c)(2). Her claims regarding the procedural and substantive reasonableness of her sentencing under the Guidelines as they existed at the time of her sentencing hearing, however, are not persuasive.

### D. McGraw as a Minor Participant

McGraw argues that the court erred by failing to apply USSG § 3B1.2 to her sentence, an application that would have reduced her base offense level by at least 2 levels due to her role as a minor participant in the conspiracy. We find no error in the court's reasoning here either.

Procedural reasonableness encompasses a sentencing judge "failing to calculate (or improperly calculating) the Guidelines range," or "selecting a sentence based on clearly erroneous facts." *United States v. Groenendal*, 557 F.3d 419, 422 (6th Cir. 2009). Under USSG § 3B1.2, where a defendant was a "minimal participant in any criminal activity," the court may decrease her base offense level by 4 levels, and where she was a "minor participant," it could decrease it by 2 levels, with the possibility of a 3-level reduction for those defendants who fall between the two categories. USSG § 3B1.2(a)-(b). Although reductions or enhancements of a sentence are usually mixed questions of law and fact and so reviewed *de novo*, determining "whether a defendant is entitled to a sentence reduction pursuant to § 3B1.2 'depends heavily on

factual determinations, which we review only for clear error.'" *Groenendal*, 557 F.3d at 422 (quoting *United States v. Harris*, 397 F.3d 404, 409 (6th Cir. 2005)).

Under the terms of McGraw's plea agreement, she waived her right to "file a motion to decrease her offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2." R. 312, Page ID 1454. Even so, the court considered and overruled her objection to the presentence report insofar as it did not recommend such a decrease. The report calculated her base offense level to be 25 after recommending a 3-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1, factored in her criminal history category of IV, and came to a guidelines range of 84-105 months. In overruling McGraw's objection to the report, the court noted that she was already receiving the benefit of pleading to a lesser included offense and described McGraw as "at least an average participant," considering "her involvement with others as well as the quantity of methamphetamine" she was involved in distributing. R. 321, Page ID 1541-42, 1547. In her plea agreement, McGraw admitted that she bought 3.5 grams of methamphetamine a week from Eversole, sold a portion of it to fund her own drug habit, and that she was responsible for the distribution of between 200-350 grams of methamphetamine.

Considering the record before us, we see no reason to find that the district court's findings or conclusions based on those findings were in error. Moreover, as to any question raised by McGraw regarding the extent of the downward departure granted by the court, such a claim is not reviewable and we have no jurisdiction over such an appeal. *See United States v. Jones*, 417 F.3d 547, 551 (6th Cir. 2005). As any reduction for a lesser role was inapplicable, McGraw's sentence was procedurally reasonable.

## III. CONCLUSION

For the reasons stated above, the sentences of defendants Begley, Eversole, Branstetter, and McGraw are AFFIRMED.