NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0126n.06

No. 15-5397

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 03, 2016
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,                       )
                                                )
  Plaintiff-Appellee,                 )
                                                )
                                                ) ON APPEAL FROM THE
v.                                              ) UNITED STATES DISTRICT
                                                ) COURT FOR THE EASTERN
JOHN C. BARNETT,                                ) DISTRICT OF KENTUCKY
                                                )
  Defendant-Appellant.                )
                                                )

BEFORE:  KEITH, COOK, and McKEAGUE, Circuit Judges.

**DAMON J. KEITH, Circuit Judge.**  Defendant John C. Barnett ("Mr. Barnett") pled guilty to one count of Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. §§ 846, 841(b)(1)(C).  At sentencing, the district court enhanced Mr. Barnett's Guidelines range under § 3B1.1(a) of the United States Sentencing Guidelines ("U.S.S.G.") for his role as an organizer or leader of criminal activity involving five or more people.  Mr. Barnett appeals the enhancement, asserting that the government failed to prove the enhancement was warranted by a preponderance of the evidence.  Because the district court's application of the enhancement was not erroneous, we **AFFIRM**.

## I. BACKGROUND

The following relevant facts were alleged in the Presentence Report ("PSR").[1]  From March 2013 to December 2013, Robert Haddox ("Haddox"), a resident of Ohio, served as a source of heroin supply for Mr. Barnett and several others who resided in Kentucky.

---

[1] On appeal, Mr. Barnett does not challenge the factual statements contained in the Presentence Report.

Mr. Barnett's role was to connect the customers in Kentucky to the supplier, Haddox, in Ohio. Various law enforcement agencies began an investigation of the heroin purchases. The agencies found a confidential informant to purchase heroin from members of the group.

In March 2013, James DeRossett ("DeRossett") was one of the individuals Mr. Barnett introduced to Haddox. Mr. Barnett admitted that he introduced them so that DeRossett could purchase heroin directly from Haddox. Mr. Barnett was on home confinement at the time. In exchange for the connection, DeRossett or another coconspirator supplied Mr. Barnett with heroin on a nearly daily basis. DeRossett made four or five trips from Kentucky to Columbus, Ohio to purchase heroin from Haddox. Mr. Barnett admitted that he arranged each trip to Columbus with Haddox via telephone. Mr. Barnett admitted that Haddox and another man, Dustin Rowe ("Rowe"), supplied him with heroin. He also admitted to using heroin daily for years. Mr. Barnett obtained heroin for "resale" in Kentucky as well.

DeRossett was subsequently arrested in April 2013. After DeRossett's arrest, Mr. Barnett got Billy Shepherd ("Shepherd") to travel to Columbus to purchase heroin from Haddox. With DeRossett unavailable to do runs, Mr. Barnett also got Shepherd to supply heroin to Mr. Barnett on a daily basis in exchange for him arranging the heroin purchases with Haddox. Later that month, Mr. Barnett recruited another individual, who was, unbeknownst to Mr. Barnett, a confidential informant. Mr. Barnett recruited the informant to drive him to Columbus to purchase more heroin from Haddox. Thereafter, Haddox was arrested in December 2013. Haddox, DeRossett, Shepherd, and Mr. Barnett were all charged in a four-count indictment. Mr. Barnett agreed to plead guilty to Conspiracy to Distribute Controlled Substances.

At the sentencing hearing, Emit Thompson, a task force officer, testified that Mr. Barnett organized trips to Columbus to buy heroin. He testified that Mr. Barnett "had a source of supply

in Columbus" and that Mr. Barnett would "arrange the deals." Mr. Barnett "wouldn't always put up the money" for the trips; "[a] lot of times, he would take a money source with him to actually purchase the drugs." The officer testified that none of Mr. Barnett's codefendants knew Haddox initially, so Mr. Barnett was their connection. The officer testified that when Mr. Barnett arranged the trips, he would arrange the transaction, get one person to drive to Ohio, and get someone else to serve as the "money man," the person who funded the trip. The officer testified that Mr. Barnett admitted to recruiting testers to test the drugs as well. Other coconspirators told the officer that Mr. Barnett arranged the majority of the trips and recruited people. On cross-examination, the officer testified that he would not classify Shepherd as having "work[ed] for" Mr. Barnett, but they had "some sort of an agreement[.]" The officer also described Mr. Barnett as the "contact point" between Haddox and purchasers in Kentucky.

Prior to sentencing, Mr. Barnett and the Government entered into a plea agreement. In the plea agreement, Mr. Barnett admitted to "organizing [multiple] trips" to Ohio for the purchase of heroin from Haddox. According to the plea agreement, "organizing" included "arranging the deals by phone with Haddox, negotiating the terms of the drug transactions, and introducing co-[d]efendant DeRossett to Haddox to purchase heroin for purposes of distribution in Floyd County." Mr. Barnett does not refute that he made these admissions; instead, he asserts that because he "did not explain exactly what he did that constituted 'organizing' or 'negotiating'" it is "as likely as not" that he merely "called Haddox to inform Haddox that the others wished to buy drugs and then relayed to the others what he was told by Haddox."

At sentencing, the district court overruled Mr. Barnett's objection to the application of a four-level enhancement for his role as an organizer or leader under § 3B1.1(a). The district court concluded that "based on [the] testimony[,] as well as what was stipulated in the plea agreement,

which are consistent, this conspiracy did involve five or more participants. . . . He did organize the trips. He admitted to the officer to organizing the trips, had testers go, organized the money, [and] arranged for drivers." Mr. Barnett timely appealed.

## II. DISCUSSION

### A. Standard of Review

"A court's factual findings regarding the application of an enhancement under § 3B1.1 are reviewed for clear error, and its legal conclusions regarding that enhancement are [] subject to deferential review." *United States v. Begley*, 602 F. App'x 622, 625 (6th Cir. 2015) (citing *United States v. Washington*, 715 F.3d 975, 982-83 (6th Cir. 2013)). Deferential review is appropriate because the district court is better positioned to evaluate the factual nuances relevant to the enhancement. *Washington*, 715 F.3d at 983.

### B. Analysis

A district court may increase a defendant's offense level by four points if the defendant was an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). The government must prove the applicability of the organizer or leader enhancement by a preponderance of the evidence. *United States v. Wright*, 747 F.3d 399, 412 (6th Cir. 2014).

The application notes to § 3B1.1 provide some of the factors pertinent to determining whether a person held a "leadership and organizational role":

> [T]itles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised

4

over others. . . . This adjustment does not apply to a defendant who merely suggests committing the offense.

U.S. Sentencing Guidelines Manual § 3B1.1 cmt. n.4 (hereinafter "U.S.S.G. § 3B1.1, Application Note 4"). Additionally, this court has repeatedly held that "[i]n general, 'a defendant must have exerted control over at least one individual within a criminal organization for the enhancement of § 3B1.1 to be warranted.'" *United States v. Salyers*, 592 F. App'x 483, 485 (6th Cir. 2015) (quoting *United States v. Vandeberg*, 201 F.3d 805, 811 (6th Cir. 2000)).

Here, Mr. Barnett does not dispute that the conspiracy "involved five or more participants." *See* U.S.S.G. § 3B1.1. Instead, Mr. Barnett argues that "[o]ther than introducing buyers to a seller and recruiting the [confidential informant] to drive on one occasion, the record does not reflect that [Mr. Barnett] engaged in any other conduct or otherwise bore any of the indicia of leadership that warrant[s] a four-level" enhancement. Mr. Barnett's argument is belied by the record and by his own admissions about organizing multiple trips, which both indicate that the enhancement was proper.

Our case of *United States v. Sierra-Villegas*, 774 F.3d 1093 (6th Cir. 2014), is instructive. In that case, the district court imposed the four-level enhancement under § 3B1.1(a) for Sierra-Villegas' involvement in a conspiracy to distribute methamphetamine ("meth"). *Id.* at 1101. We held that the enhancement was proper. *Id.* Sierra-Villegas had "arranged to travel to Michigan with the help of his associate and alleged coconspirator Jon Jeannin, Jr." *Id.* at 1096. Jeannin stated that "Sierra-Villegas had contacts in Arizona who could provide crystal methamphetamine." *Id.* Sierra-Villegas and Jeannin "had an arrangement under which Sierra-Villegas would sell meth to Jeannin in Kansas City at a discounted rate if Jeannin arranged for drivers to bring the meth from Arizona to Kansas City." *Id.* Sierra-Villegas provided a car for the others to use for this purpose. *Id.*

This court reasoned that the "organizer or leader" enhancement was proper because Sierra-Villegas was the only person who "had connections in Arizona"; he provided a car that the conspirators used to transport the drugs; he "arranged (through Jeannin) for drivers to bring methamphetamine from [Arizona]"; he gave others directions to the location for the drugs; and when a coconspirator "pulled out" of a transaction, Sierra-Villegas compensated for the missing link by traveling to Michigan to "facilitate the deal." *Id.* at 1101. "These facts strongly suggest[ed] that Sierra-Villegas played a leadership role, organizing key features of the conspiracy and directing the actions of his coconspirators." *Id.*

Recently, in *United States v. Edwards*, No. 13-2629, 2015 WL 3973388 (6th Cir. July 1, 2015), we similarly held that application of the four-level enhancement under § 3B1.1(a) was proper. In *Edwards*, the defendant admitted at his plea hearing that "he had directed two people to pick up" cocaine in Columbus, Ohio. *Id.* at *4. He also gave a coconspirator, Mendez, instructions on where to go to pick up cocaine in Lansing, Michigan. *Id.* The defendant protested that Mendez "worked for" someone else, not him. *Id.* This court found that argument unavailing because the defendant "had extensive communications with" Mendez during the time surrounding Mendez's pickup of the cocaine. *Id.* The court determined that "[e]ven if" there was another organizer or leader, "the evidence was sufficient to find that Edwards was one, too." *Id.* We also noted that "in terms of the nature and degree of participation, Edwards's role was essential and extensive." *Id.* While he was "not physically present for the transfer and transportation of the cocaine, he was the *hub of the communications among all of the conspirators*; virtually all of the telephone calls and text messages flowed through him." *Id.* (emphasis added). Therefore, "Edwards's involvement appears to have been crucial to every step of the conspiracy, from the initial contact with [another coconspirator], to arranging the

details of the pickup of the cocaine in Columbus, to setting up the drop-off of the cocaine to Mendez in Lansing." *Id.* at *4. Accordingly, we affirmed the district court's application of the § 3B1.1(a) enhancement. *Id.* at *5.

Mr. Barnett's case is like *Sierra-Villegas* for several reasons. First, like in *Sierra-Villegas*, Mr. Barnett was initially the only person who "had connections" to Haddox in Ohio. *See* 774 F.3d at 1101. Like in *Sierra-Villegas*, Mr. Barnett provided transportation for the trip. *See id.* While the defendant in *Sierra-Villegas* had arranged for drivers indirectly, through his coconspirator, *see* 774 F.3d at 1101, Mr. Barnett was even more involved because he arranged for drivers directly by calling them himself. Additionally, it is not necessary for any of Mr. Barnett's coconspirators to have "work[ed] for" Mr. Barnett, such that Mr. Barnett was a boss or king pin. *See id.* at 1096 (noting that Sierra-Villegas had an "arrangement" with his coconspirator); *see also* U.S.S.G. 3B1.1, Application Note 4 (noting that "titles such as 'kingpin' or 'boss' are not controlling"). Much in the way that Sierra-Villegas had an agreement with his coconspirator, Mr. Barnett had an "arrangement" with Shepherd. And like the defendant in *Sierra-Villegas*, when one person fell through, Mr. Barnett compensated for the missing link. Specifically, when DeRossett was arrested, Mr. Barnett secured an alternate—Shepherd—to "facilitate the deal." *See Sierra-Villegas*, 774 F.3d at 1096. "These facts strongly suggest that [Mr. Barnett] played a leadership role, organizing key features of the conspiracy and directing the actions of his coconspirators." *See id.* at 1101.

Mr. Barnett's case is also similar to *Edwards* in many ways. Similar to the defendant in *Edwards*, Mr. Barnett admitted in his plea agreement that he organized the trips for the conspiracy. "We have held that 'concessions in a plea agreement are sufficient to support a § 3B1.1 enhancement.'" *United States v. Polly*, 385 F. App'x 454, 459 (6th Cir. 2010) (citation

omitted). Whereas the defendant in *Edwards* admitted to directing two people to make a trip to purchase drugs, Mr. Barnett admitted to doing much more—he admitted that he "organiz[ed]" the trips of multiple participants, he "arrang[ed] the deals by phone with Haddox," and he "negotiat[ed] the terms of the drug transactions." He recruited people to test the drugs, and recruited a "money man" to fund some of the trips. Additionally, like the defendant in *Edwards*, Mr. Barnett had "extensive communications" with the coconspirators. *See Edwards*, 2015 WL 3973388, at *4. His role was "essential and extensive" because he served as "the hub of the communications" among them.[2] *See id.* These facts show that "[Mr. Barnett's] involvement appears to have been crucial to every step of the conspiracy, from the initial contact with [Haddox], to arranging the details of the pickup of the [heroin] in Columbus[.]" *See id.*

Mr. Barnett relies on our opinion in *Salyers*, 592 F. App'x 483, to support his assertion that the district court erred in his case. However, Mr. Barnett's reliance on *Salyers* is misplaced. In *Salyers*, we held that the district court erred in imposing the four-level § 3B1.1(a) enhancement because the evidence did not "demonstrate that [the] defendant exercised control over any other participant." *Id.* at 485. Instead, the evidence only revealed that the defendant "purchased heroin in Cincinnati, travelled back to Kentucky, and distributed it to others." *Id.* But unlike the defendant in *Salyers*, Mr. Barnett's involvement in the conspiracy, including his own admissions, shows that he exercised control over others. He recruited people to transport drugs so that he could get a portion of the drugs for his use; he made the arrangements, assigned roles, and coordinated the players. Mr. Barnett also initiated the plans. *See United States v.*

---

[2] "[P]laying an essential role in the offense is not equivalent to exercising . . . control over other participants," which is required for an enhancement under § 3B1.1 to apply. *See Wright*, 747 F.3d at 412. Therefore, while the record reveals that Mr. Barnett's involvement was essential and extensive, we do not rely on this evidence to conclude that Mr. Barnett exerted control over at least one other person. Other evidence in the record, as further discussed below, supports a conclusion that Mr. Barnett exerted control over at least one other person, and the enhancement was also proper in light of Mr. Barnett's other conduct. *See id.* (holding that a § 3B1.1 enhancement was nevertheless proper where the defendant "acted as coordinator and sought the participation and agreement of others").

*Lanham*, 617 F.3d 873, 890 (6th Cir. 2010) (noting that whether the defendant initiated the idea is a "significant" factor in the § 3B1.1 analysis). As the initiator and planner, Mr. Barnett had the power to influence when the transactions occurred and who played what role—in other words, he exerted "decision making authority." *See* U.S.S.G. 3B1.1, Application Note 4.

Mr. Barnett's conduct is sufficient for the application of the "organizer" or "leader" enhancement under § 3B1.1. *See, e.g.*, *Sierra-Villegas*, 774 F.3d at 1101; *see also United States v. Patterson*, 607 F. App'x 537, 540 (6th Cir. 2015) (finding that the enhancement was proper where the defendant recruited, organized, and exerted decision-making authority over others); *United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009) (finding that the enhancement was proper where the defendant "negotiated the price of the cocaine," supplied cocaine to others, and exercised authority over his brother by offering to have his brother transport cocaine to a purchaser); *United States v. Gibson*, 165 F. App'x 421, 422 (6th Cir. 2006) (finding that the enhancement was proper where the defendant "recruited" others to "transport cocaine" and one of the coconspirators was known as a "drug runner" for the defendant).

Applying the deferential standard of review, we cannot conclude that the district court erred in imposing a four-level § 3B1.1(a) enhancement upon Mr. Barnett for being an organizer or leader.[3]

### III.   CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[3] Notably, after finding that Mr. Barnett was an "organizer" or "leader," the district court noted that Mr. Barnett was a "supervisor of at least one" of the participants. The defendant did not take issue with this language on appeal, and a thorough reading of the transcript reveals that the use of the word "supervisor" here referred to Mr. Barnett's "control" over one of the participants, not the term "supervisor" as used to define a separate type of role found in subsection (b) of § 3B1.1. Additionally, the district court also discussed Mr. Barnett's "management" of the "property, assets, or activities of [the] criminal organization." Though this statement does not appear to have affected the district court's ultimate ruling, and though the defendant took no issue with this language on appeal, we take this opportunity to remind courts that control over the organization's "property, assets, or activities" may warrant an *upward departure*, but it is the control over a particular *individual* that warrants the *enhancement* under § 3B1.1. *See United States v. Christian*, 804 F.3d 819, 822 (6th Cir. 2015).