NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Case No. 17-3229

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

May 31, 2018

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| JONATHAN RIVERA, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: SUTTON, McKEAGUE, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Defendant Jonathan Rivera pleaded guilty to Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A). At sentencing, the district court applied a § 3B1.1(a) enhancement for his role as an organizer or leader of the criminal activity involving five or more people. Rivera now appeals that enhancement, arguing that he was a mere middleman and that the district court failed to make an explicit finding that his conduct involved five or more participants, or was otherwise extensive. For the reasons that follow, we **AFFIRM**.

**I.**

In March 2015, a confidential source informed the Organized Crime and Drug Enforcement Task Force that Jose Martinez ("Martinez") was distributing multi-kilogram quantities of cocaine in numerous Ohio counties. Following that tip, DEA agents utilized witness interviews,

confidential sources, surveillance, court-authorized wire interception orders, and other techniques to investigate the Drug Trafficking Organization ("DTO").

Relevant to Defendant-Appellant Rivera, the investigation uncovered the following facts: Rivera was in regular contact with Martinez around the time authorities seized seven kilograms of cocaine; Rivera provided Martinez detailed instructions regarding the collection of money and the direction of couriers and inquired about the status of the various operational details—including the progress of lower-level conspirators such as co-defendant Ricardo Bustillos-Ramos ("Bustillos-Ramos"); Martinez referred to Rivera as the "boss," took directions from Rivera, described Rivera and his role in the DTO, and warned co-conspirators about the consequences of failing Rivera. Wire intercepts also revealed Rivera's conversations with co-defendant Raymone T. West ("West") in which Rivera discussed a narcotics sale and West mentioned owing Rivera money from a previous transaction. Similarly, Rivera spoke to Bruce Cuevas, Sr. ("Cuevas, Sr."), asking him to make a delivery and to pick "documents" up from West. Rivera also discussed multiple suppliers with Martinez and indicated that he would switch to a more reliable source when encountering issues with another.

Following the investigation, Rivera and eleven co-defendants were named in an 84-count indictment. Pursuant to a written plea agreement, Rivera pleaded guilty to Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A). In sum, Rivera admitted to being part of a conspiracy to supply cocaine to Martinez for distribution and that Martinez supplied it to others for redistribution. In that agreement, Rivera stipulated that he had possessed and distributed more than five but less than fifteen kilograms of cocaine. Rivera's offense carried a ten-year mandatory minimum term of imprisonment. The parties stipulated that the base offense level was 30 and that Rivera was entitled to a three-level downward

adjustment for acceptance of responsibility. As they do on appeal, the parties disputed whether Rivera was an organizer or leader under § 3B1.1(a). There was no agreement as to the sentencing range.

After a magistrate judge conducted a plea hearing and recommended that the district court accept the plea—which it did—the Probation Department prepared the initial presentence investigation report ("PSR"). The PSR recommended that Rivera be subject to the four-level enhancement under § 3B1.1(a). Rivera did not object and the PSR was finalized. After a new attorney appeared on Rivera's behalf, he objected to the PSR. Though Rivera did not object to the number of individuals in the conspiracy, he argued that he was merely a middle-man supplier rather than a leader or organizer.

At sentencing, the district court overruled Rivera's objections to the organizer or leader four-level enhancement. The district court concluded that because Rivera controlled collection and delivery of the narcotics, oversaw the day-to-day operations of the DTO, and because Martinez referred to Rivera as the boss—and treated him as such—the evidence illustrated that Rivera was a leader or organizer under the statute. Specifically, the district court, partially reading from the PSR, stated:

> "Mr. Rivera controlled who would collect the money, who would deliver kilograms of cocaine and when these things would happen. He also knew about day-to-day operations of the drug trafficking organization, including who the couriers were and who the street-level dealers were. But perhaps the most telling remark is one made by Mr. Martinez when talking about the impending delivery of cocaine from Texas. During a call on April 11, 2015, with codefendant Ramos, Martinez said "Look, they are on their way. Whatever the guy says he does. That dude moves big terrains, he moves grounds and he moves worlds."
>
> And I agree with you, it's not enough that Mr. Martinez referred to him as the boss, but that's certainly a factor that I consider. Mr. Martinez didn't refer to any other participant in the drug cartel as the boss.

\*　　\*　　\*

> Mr. Martinez was an organizer or leader of one or more other participants as evidenced by the information provided, that in the plea agreement, that in the indictment, that in the presentence report, that written in response to the objections to the presentence report.
>
> Mr. Rivera was responsible for arranging and overseeing deliveries of cocaine from Mexican-based suppliers to Houston, Texas. He also organized the transportation of that cocaine from Texas to the Northern District of Ohio.
>
> And this was enough to convince the officer to respond in that way, and more than enough to persuade me that there is indeed substantial evidence way beyond preponderance to allow me to apply that four-level adjustment upwards.

RE 318, PageID #2564-65.

After applying the four-level adjustment, as well as the three-level downward adjustment for acceptance of responsibility, Rivera's offense level was 31, with a criminal history category of II, and a final guideline range of 121 to 151 months. The district court sentenced Rivera to a term of 121 months' imprisonment, followed by a five-year term of supervised release.

## II.

We review a court's factual findings regarding the application of an enhancement under § 3B1.1 for clear error. *United States v. Begley*, 602 F. App'x 622, 625 (6th Cir. 2015). A district court's legal conclusions regarding that enhancement are subject to deferential review because the district court is better positioned to evaluate factual nuances relevant to enhancement. *Id.*; *United States v. Washington*, 715 F.3d 975, 982-983 (6th Cir. 2013).

## III.

Under the guidelines, a district court may increase a defendant's offense level by four levels if the defendant was an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a); *see also Washington*, 715 F.3d at

983. The government must prove that a defendant's conduct warrants the enhancement by a preponderance of the evidence. *United States v. Wright*, 747 F.3d 399, 412 (6th Cir. 2014). The trial court's determination that a defendant played an aggravating role is "heavily dependent upon the facts." *United States v. Groenendal*, 557 F.3d 419, 423 (6th Cir. 2009) (citations omitted).

On appeal, Rivera challenges both aspects of the enhancement—that the evidence shows he was an organizer or leader and that there were five or more participants in the conspiracy. We address each separately.

**A.**

Rivera asserts that there was insufficient evidence to show he was an "organizer or leader." This argument is without merit. According to Application Note 4, relevant factors to consider when determining whether a defendant is an organizer or leader include:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n. 4. While Rivera need not satisfy each of Application Note 4's factors, all available evidence suggests organizational leadership.

The district court found that Martinez relied on Rivera to supply the drugs and was accountable to Rivera after selling the drugs or providing them to a lower salesperson. Rivera's role was extensive, substantial, and crucial to every step of at least a portion of the conspiracy. *See United States v. Edwards*, 635 F. App'x 186, 195 (6th Cir. 2015). The intercepted calls also show that Rivera had a high degree of decision-making authority with regard to suppliers, payment, and couriers. Indeed, the surveillance showed decisions to switch both suppliers and couriers when Rivera was unsatisfied with their performance.

Rivera correctly argues that the enhancement should not be applied to middlemen or suppliers. *See United States v. Schultz*, 14 F.3d 1093, 1099 (6th Cir. 1994) (finding the enhancement inapplicable to those who buy and sell cocaine). However, the enhancement is appropriate when the defendant's actions exceed those of a middleman, such as active roles in delivery, or control over another. *See United States v. Ledezma*, 26 F.3d 636, 644 (6th Cir. 1994). The district court found both here. Rivera also contends that the district court did not identify one individual that he allegedly controlled. *United States v. Vandeberg*, 201 F.3d 805, 811 (6th Cir. 2000) ("a defendant must have exerted control over at least one individual within a criminal organization for the enhancement of § 3B1.1 to be warranted") (quotation and citation omitted). This is inaccurate. The district court made it clear that throughout the surveillance Rivera extensively directed Martinez's activities and appeared to direct further subordinates through Martinez—at least to some degree.[1]

Rivera also argues that he cannot be labeled a leader or organizer simply by virtue of the fact that Martinez referred to Rivera as the boss when speaking to other DTO members. Again, he is correct—"titles such as 'kingpin' or 'boss' are not controlling." U.S.S.G. § 3B1.1 cmt. n. 4. But the district court acknowledged this admonition and did not rely solely on such terms, only noting that it was a factor the court considered. This is not error.

Finally, Rivera also asserts that the Probation Department erred in its recommendation because it labeled him a supervisor, rather than leader. However, that term appears to be a singular

---

[1] Rivera cites *United States v. Odom*, 13 F.3d 949, 960-61 (6th Cir. 1994) and *United States v. Garcia*, 19 F.3d 1123, 1125 (6th Cir. 1994) in support of reversal, on the theory that the government did not provide sufficient evidence that he "directed" each of the relevant subordinates. *See Garcia*, 19 F.3d at 1125 (remanding because "there was no connection between Garcia and the third tier of sellers."); *Odom*, 13 F.3d at 960-61 (remanding because "the record shows only that Bulger was a highly placed middleman."). The government does not respond to either of these citations, but they are distinguishable in any event. As stated above, the district court made it clear that Rivera controlled each tier of the operation—directly or indirectly—to some extent. On clear-error review, this is enough to support the district court's ruling.

inconsistency and a defendant can serve a supervisory role in addition to that as a leader and organizer. Moreover, it is clear that the Probation Department's recommendation was not determinative as the district court provided exhaustive analysis for its imposition of the enhancement. Indeed, the district court itself never referred to Rivera in supervisory terms. While Rivera contends that the district court also erred by exclusively relying on the probation reports, the facts elucidated by the district court could be gleaned from several sources and we will not find plain error in supposition.

Although Rivera did not direct the activities of the suppliers, he did direct Martinez and Cuevas Sr,, and communicated with West, Cuevas, Sr., Bustillos-Ramos, and Rivera's own suppliers. The totality of the arrangement suggests that Rivera exercised a measure of control of Martinez—and those below him, even if by proxy. Unquestionably, Rivera initiated the flow of the drugs from the suppliers to Martinez, other dealers, and the community. This establishes both his role as a manager and supervisor. His control and direction of others elevates him to a leader and organizer. Indeed, at the sentencing hearing, Rivera's counsel argued that his client was merely guilty of "quarterbacking" the operation or "brokering" the transactions. RE 318, PageID #2258, 2560. Applying the mandated deferential standard of review, we cannot conclude that the district court erred in imposing the § 3B1.1(a) organizer or leader enhancement.

**B.**

Rivera next argues that the district court failed to make a specific finding as to the identity of "five or more participants" in the criminal activity as required by § 3B1.1. This, too, is without merit.

Here, the district court stated, partially quoting the PSR, that "'[t]he instant case certainly involved five or more' – as you know, Mr. Rivera was one of 12 indicted. So – 'five or more

participants or was otherwise extensive.'  In this case, it was both, geographically and extensive in terms of the number of participants."  RE 318, PageID #2564.  In his plea agreement, Rivera admitted to conspiring with the eleven co-defendants, and the factual basis for his plea agreement specifically mentioned more than five co-defendants.  "We have held that 'concessions in a plea agreement are sufficient to support a § 3B1.1 enhancement.'"  *United States v. Polly*, 385 F. App'x 454, 459 (6th Cir. 2010) (citation omitted).  Rivera did not challenge this aspect of his sentencing and raised no objection at his hearing, nor did he request that the district court make a specific finding regarding who the five or more participants in the criminal activity were.  Moreover, Rivera cites precedent in which a defendant simply provided cocaine to one person who distributed to others without any connection between the defendant and the third-tier sellers.  That is not the case here.  As detailed, Rivera communicated with parties other than Martinez and also directed the use of certain couriers.  While the PSR indeed only states four people, there is no doubt that more participants were involved.

Although the district court did not explicitly name the people organized by Rivera at sentencing, the issue was nonetheless addressed, and the district court referred to the other persons named in the indictment.  The indictment named eleven people, including Rivera, Martinez, Cuevos, Sr., Bustillos-Ramos, and West.  This is sufficient to satisfy the guideline requirements.  *See, e.g.*, *United States v. Ghazaleh*, 58 F.3d 240 (1995) (finding that indictment, which named eleven people, satisfied the guideline requirements, even if the district court did not explicitly name those defendants at sentencing).

Between Rivera, Martinez, West, Cuevas, Sr., and the unnamed but multiple suppliers, there were more than five participants in the conspiracy.  Moreover, Rivera interacted with Bustillos-Ramos, even if Martinez did so more often.  This is all in addition to Rivera's explicit

and implicit admissions in his plea agreement, the fact that he was charged with eleven other co-conspirators, and that the DTO was otherwise extensive, establishing a cocaine route from Mexico to Texas and north to Ohio.  These facts more than satisfy § 3B1.1.

## IV.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.